THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:22-cv-81078-AMC

AFFORDABLE AERIAL PHOTOGRAPHY, INC.,

    Plaintiff,

v.

PATRICK LETOURNEAU and DOUGLAS ELLIMAN FLORIDA, LLC,

    Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO ELLIMAN'S MOTION TO DISMISS THE COMPLAINT**

Plaintiff Affordable Aerial Photography, Inc. ("Plaintiff") hereby files this memorandum in opposition to defendant Douglas Elliman Florida, LLC's ("Elliman") Motion to Dismiss the Complaint (the "Motion") [D.E. 12], and alleges as follows:

**INTRODUCTION**

Rather than take responsibility for its own actions and those of its real estate associate (Patrick Letourneau) (as Elliman is statutorily required to do), Elliman opted instead to engage in name calling and victim blaming by referring to Plaintiff as a copyright "troll"[1] in the first sentence of the Motion. Elliman then goes on to refer to Plaintiff's conduct herein (suing to enforce its intellectual property rights) as "reprehensible" and further throw Mr. Letourneau under the proverbial bus as the sole person responsible for copyright infringement. Elliman's arguments, however, are not well-taken.

---

[1] See Motion, at p. 1.

Setting aside the misplaced/inappropriate vitriol, the Motion fails to address or even acknowledge that Plaintiff has sued Elliman for ***both*** direct copyright infringement and vicarious infringement. The Complaint plainly alleges that Defendants (Elliman and Mr. Letourneau) published (without authorization) Plaintiff's photography in a MLS listing for the sale of a home and that such constitutes direct copyright infringement. Had Elliman endeavored to read the Complaint (rather than lashing out like a child at Plaintiff), it perhaps would have understood precisely what it is being sued for.

With respect to vicarious infringement, Elliman conveniently fails to address Florida law specifically providing that Elliman has an obligation to "direct, control, or manage" Letourneau's real estate activities and that Letourneau – without Elliman's permission/review – cannot publish any MLS listing whatsoever. Elliman's desire to escape liability here and blame both its real estate associate/Plaintiff is understandable – this lawsuit is not Elliman's first foray into the world of copyright infringement. Notably, the Motion boasts that Plaintiff recently dismissed a lawsuit against Elliman due to a 2021 "general release Plaintiff had granted Douglas Elliman as part of a settlement of yet a third suit it filed in this Court against Douglas Elliman and several of its real estate agents."[2] That "third suit" is <u>Affordable Aerial Photography, Inc. v. Douglas Elliman Florida, LLC et al.</u>, Case No.: 9:20-cv-81985 (S.D. Fla.) (referenced in the Complaint at ¶ 41). There (as here), Plaintiff sued Elliman for vicarious infringement with respect to various MLS listings for which Elliman was the broker. Rather than move for dismissal, Elliman filed an Answer in that lawsuit and ultimately entered into a confidential settlement agreement (as reflected by the docket) to resolve Plaintiff's claims. Months after that agreement was reached, Elliman is still failing to properly supervise its real estate associates and still reaping the profits from the

---

[2] <u>Id.</u> at pp. 1 – 2.

rampant infringement of Plaintiff's work. While Elliman is quick to cast blame and lodge allegations that Plaintiff is a "troll,"[3] it should perhaps take a long look in the mirror and exercise a modicum of control over its realtors (as it is required to do under the law) if Elliman desires to avoid continued liability for copyright infringement.

## BACKGROUND

1. As set forth in the Complaint, Plaintiff's sole shareholder (Robert Stevens) is a professional photographer specializing in the luxury real estate industry.[4]

2. In 2013, Plaintiff created a photograph of the exterior of a home titled "Esplande Grande pool AAP 2013, Feb. 8, 2013" (the "Work") which was registered by Plaintiff with the Register of Copyrights on July 16, 2015 and assigned Registration No. VA 1-967-718.[5]

3. Elliman is a real estate brokerage for which Letourneau (a licensed real estate agent) either serves as an employee or an independent contractor.[6]

4. On March 11, 2022, Letourneau *and Elliman* listed for sale the real property located at 201 S. Narcissus Avenue, Unit 403, West Palm Beach, FL 33401 (the "Property").[7]

5. In doing so, Letourneau *and Elliman* created a published a Multiple Listing (MLS#: RX-10784036) (the "MLS Listing") to market and sell the Property.[8]

6. The MLS Listing includes therein a copy of the Work amongst the various

---

[3] Elliman's name-calling is frankly irrelevant to the actual issues before the Court. See Alarm Grid v. Alarm Club, No. 17-80305-CIV-MARRA, 2018 U.S. Dist. LEXIS 235605, at *11 (S.D. Fla. Apr. 27, 2018) ("Plaintiff seeks to exclude any evidence of Plaintiff's claims or allegations of copyright infringement actions against others, including the term 'copyright troll' as applied to Plaintiff…. After due consideration, the motion is granted because such evidence is not relevant to the issues in this case.").

[4] See Complaint, at ¶ 8.

[5] Id. at ¶¶ 14 – 15.

[6] Id. at ¶¶ 17 – 19.

[7] Id. at ¶ 25.

[8] Id. at ¶ 26.

photographs selected by Letourneau *and Elliman* to market the Property.[9]

7.     Elliman appears as the listing broker on the MLS Listing.[10]

8.     Neither Letourneau nor Elliman was licensed to use or display the Work as part of the MLS Listing.[11]

## ARGUMENT

I.    **Legal Standard**

   *A.    Motion to Dismiss*

"For purposes of deciding a motion to dismiss, the Court accepts the allegations of the complaint as true and views the facts in the light most favorable to it." Martorella v. Deutsche Bank Nat. Trust Co., 931 F. Supp. 2d 1218, 1221 (S.D. Fla. 2013). "When conducting this analysis, the Court may examine only the four corners of the complaint." EEOC v. Darden Rests., Inc., 143 F. Supp. 3d 1274, 1278 (S.D. Fla. 2015) (citing St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). Under Rule 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 555 U.S. 662 (2009). A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, a well

---

[9]     Id. at ¶ 27.

[10]    Id. at ¶ 21.

[11]    Id. at ¶ 29.

pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." Id. at 556.

**II.     Direct Copyright Infringement**

The *entirety* of the Motion is dedicated to the notion that Plaintiff has not sufficiently pleaded a claim for vicarious copyright infringement against Elliman.  The Motion ignores, however, that Count I of the Complaint ("copyright infringement") is asserted against both Letourneau *and Elliman*.  While ¶¶ 39 – 40 of the Complaint do present an alternative basis for liability (vicarious infringement) against Elliman, that does not somehow mean that only vicarious liability is asserted against Elliman.  To the contrary, Count I of the Complaint makes clear that it is brought against "Defendants" (defined as Letourneau and Elliman) and that the primary claim asserted therein is for *direct* copyright infringement.

The Copyright Act, 17 U.S.C. § 501(a), provides that "(a)nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a).  "Copyright infringement has two elements: (1) ownership of a valid copyright, and (2) copying of protectable elements." Home Design Servs., Inc. v. Turner Heritage Homes Inc., 825 F.3d 1314, 1320 (11th Cir. 2016).

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).  The Complaint plainly alleges that Plaintiff owns a valid copyright (¶¶ 14 – 16) and likewise attaches the certificate of registration pertaining to the subject photograph.

The copying element of an infringement claim has two components. Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1232 (11th Cir. 2010). First, a plaintiff must demonstrate that the defendants copied the plaintiff's work as a factual matter. Id. Second, the plaintiff must establish "substantial similarity" between the allegedly infringing work and the elements of the copyrighted work that are legally protected. Id. at 1233. The Complaint plainly alleges that ***Defendants*** copied the subject photograph and published it within the MLS Listing (¶¶ 25 – 27) and attaches a copy of the MLS Listing itself. The Complaint thus easily satisfies the pleading requirements for setting forth a claim for copyright infringement against both Letourneau ***and Elliman***.

## III.  Vicarious Copyright Infringement

"Even though the Copyright Act does not specifically provide for secondary liability, vicarious and contributory copyright infringement are well established principles derived from common law." BUC Int'l Corp. v. Int'l Yacht Council Ltd., 489 F.3d 1129, 1138 n.19 (11th Cir. 2007). "For [a defendant] to be secondarily liable, the [plaintiff] must establish that there has been direct infringement by a third party." Venus Fashions, Inc. v. ContextLogic, Inc., No. 3:16-cv-907-J-39MCR, 2017 U.S. Dist. LEXIS 155748, at *32 (M.D. Fla. Jan. 17, 2017).

"In order to state a claim for vicarious copyright infringement, a plaintiff must allege (1) the right and ability to supervise, and (2) a direct financial interest in the profits of the infringing activity." Millennium Funding, Inc. v. 1701 Mgmt. Ltd. Liab. Co., No. 21-cv-20862-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 55799, at *18 (S.D. Fla. Mar. 25, 2022) (internal quotation marks omitted); see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930-31 (2005) ("Liability for vicarious copyright infringement arises … even if the defendant initially lacks knowledge of the infringement."); Coach Inc. v. Kim's Mgmt., Inc., No. 1:10-CV-02746-JJOF, 2012 U.S. Dist. LEXIS 179557, at *11 (N.D. Ga. Feb. 28, 2012) ("Vicarious

copyright infringement liability is an outgrowth of respondeat superior.") ; UMG Recordings, Inc. v. Bright House Networks, LLC, No. 8:19-cv-710-MSS-TGW, 2020 U.S. Dist. LEXIS 122774 (M.D. Fla. July 8, 2020) ("The doctrine subsequently expanded to cover independent-contractor relationships as well.").

In attacking the Complaint, Elliman relies heavily on Myeress v. Heidenry, No. 1:19-cv-21568-RAR, 2019 U.S. Dist. LEXIS 205631 (S.D. Fla. Nov. 25, 2019).  In that case, Myeress (a photographer) sued Heidenry (a realtor) for copyright infringement with respect to Heidenry's display of Myeress' photograph on Heidenry's website (www.rhluxurymiami.com).  Myeress likewise sued MDLV, LLC (the realtor's broker) for vicarious infringement.  Judge Becerra's Report and Recommendation (which was adopted after no objections were filed) was that Myeress' claim for vicarious infringement should be dismissed as sufficient facts were not alleged.

Elliman's reliance on Myeress, however, is misplaced.  Notably, the briefing on the motion to dismiss in Myeress is silent with respect to Florida's real estate code (Fla. Stat. § 475.001 *et seq.*), and such silence is absolutely material hereto.  As stated in the Complaint:

> A person licensed as a real estate sales associate may not operate as a sales associate without a broker that is registered as her or his employer.  Fla. Stat. § 475.42(1)(B).  Moreover, the terms "employ," "employment," "employer," and "employee" when used to describe the relationship between a broker like Douglas Elliman and Letourneau, include an independent contractor relationship when such relationship is intended by and established between a broker (Douglas Elliman) and a sales associate (Letourneau), and furthermore the existence of an independent contractor relationship shall not relieve the broker (Douglas Elliman) of its duties, obligations, or responsibilities, which include being responsible for the offences of Letourneau. See Fla. Stat. § 475.01(2).[12]

---

[12]   Id. at ¶ 23.

With respect to the first prong of a vicarious liability claim, the issue in Myeress was whether the broker had the right and ability to supervise its agent's publication of a self-promotion website. The issue here is whether Elliman has the right and ability to supervise its agent's publication of the MLS Listing. The answer is simple – not only does Elliman have the right/ability, it has the **obligation** to do so. Fla. Stat. § 475.25(1)(u) provides that the Florida Real Estate Commission may impose various forms of discipline on a broker (such as Elliman) if it "has failed, if a broker, to **direct, control, or manage** a broker associate or sales associate employed by such broker."[13] Although never discussed in Myeress, Florida law is unequivocally clear that a broker (Elliman) has a legal obligation (not just a right) to supervise the activities of its realtor associates (Letourneau). Further, unlike the agent in Myeress, the Complaint in this lawsuit plainly alleges that "Letourneau could not have published the subject MLS Listing without the approval and consent of his supervising broker (Douglas Elliman)."[14] This is because Fla. Stat. § 475.42(b) provides that a person licensed as a sales associate (Letourneau) "may not operate as a broker or operate as a sales associate for any person not registered as her or his employer."

It is thus not a conclusory allegation that Letourneau could not have published the MLS Listing without the review/approval of Elliman – the statement is true by virtue of Florida law itself. If anything, this case is more akin to Stross v. PR Advisors, LLC, No. 3:19-CV-1086-G, 2019 U.S. Dist. LEXIS 190506 (N.D. Tex. Oct. 31, 2019). In that case, the plaintiff sued a realtor and his broker with respect to the realtor's unauthorized publication of a photograph on the realtor's website (which contained the broker's logo on the website). In denying the broker's

---

[13] Emphasis added.

[14] See Complaint, at ¶ 40.

motion to dismiss, the court relied heavily on Texas' laws/regulations (substantially similar to Florida) requiring a broker to supervise the activities of its sales associate:

> The court next considers whether Stross has stated a claim for vicarious copyright infringement against PRA. Stross alleges that PRA had a direct financial interest in Gardner's infringing activity "by virtue of the fees and/or commissions [PRA] derived in connection with [Gardner's] role as PRA's sponsored agent, and by virtue of the increased traffic and real estate leads that Gar[d]ner and [PRA] generated through [Gardner's] use of" Stross's photo. Complaint at 6. Furthermore, Stross alleges that PRA had not only "the right and ability to supervise [Gardner]'s infringing activities," but also the legal obligation to do so. See Complaint at 4; 6, n.2. The plaintiff points to section 1101.803 of the Texas Real Estate License Act, which provides that "[a] licensed broker is liable to . . . the public . . . for any conduct engaged in under this chapter by . . . a sales agent associated with or acting for the broker." Tex. Occ. Code Ann. § 1101.803. The plaintiff also cites section 535.2 of the Texas Administrative Code, which provides in pertinent part that "[a] broker may delegate to another license holder the responsibility to assist in administering compliance with the Act and Rules, but the broker may not relinquish overall responsibility for the supervision of license holders sponsored by the broker." 22 Tex. Admin. Code § 535.2(e) (emphasis added).
>
> Upon careful consideration of the pleadings and the parties' arguments, the court concludes that the plaintiff has stated a claim for vicarious copyright infringement against PRA. First, Stross has adequately alleged that PRA has a direct financial interest in Gardner's use of the photo on her website. Gardner is PRA's sponsored agent, and it is plausible that Gardner's use of the photo to enhance the appeal of her website provides both Gardner and PRA with a direct financial benefit in the form of increased business. See Playboy Enterprises, Inc. v. Webbworld, Inc., 968 F. Supp. 1171, 1177 (N.D. Tex. 1997) (Saffels, J.) (finding the "financial interest" element of vicarious liability was satisfied where the "plaintiff's photographs enhanced the attractiveness of the [direct infringer's] website to potential customers").
>
> Second, **Stross's undisputed allegation that Gardner is a licensed real estate agent under PRA's sponsorship, coupled with PRA's statutory obligation to supervise Gardner's actions, are sufficient to state a plausible claim that PRA has the right and ability to supervise Gardner's infringing activity**. See Stemtech, 834 F.3d at 388-89 (finding the "supervise or control" element

> of vicarious liability was satisfied where the defendant "had the practical ability to police the [direct infringers'] conduct" on independent websites by "withholding compensation and access to back office support.") (internal citation omitted).

Stross, 2019 U.S. Dist. LEXIS 190506, at *6-9 (emphasis added). Respectfully, whether Elliman provides office space, training, etc. to Letourneau is both irrelevant (given Elliman's legal obligation to supervise Letourneau) and uniquely within the knowledge of Elliman. The Motion's suggestion that the Complaint fails absent inclusion of such allegations is frankly contrary to the very Florida statutes that govern Elliman's status as a licensed broker in this State.

With respect to the second prong of a vicarious liability claim, the Motion curiously makes a *factual* argument that "public records" consisting of Realtor.com, Redfin, and Zillow listings of the Property establish that the Property has not been sold and thus Elliman has not profited.[15] This argument, however, is both improper at the motion to dismiss stage (as Elliman's 'facts' are not within the four corners of the Complaint) and a misrepresentation of the law itself. As explained above, Elliman must have a "direct financial interest" in the infringement – not that the infringement caused a sale from which Elliman was directly paid. As quoted above in Stross, a direct financial interest can involve increased traffic, real estate leads, and the fact that Elliman did not have to make an outlay for the proper licensing of professional photography in connection with the MLS Listing. It is certainly plausible that Elliman has a direct financial interest in its real estate associates' sale of real estate – indeed, it is Elliman's primary business.

Whether in the form of direct or vicarious infringement, the Complaint clearly alleges a plausible claim against Elliman. As a result, the Motion must be denied.

---

[15] See Motion, at pp. 9 – 10.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion and (b) for such further relief as the Court deems proper.[16]

Dated: October 10, 2022.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com
james@copycatlegal.com
lauren@copycatlegal.com

By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.
    Florida Bar No.: 19291
    James D'Loughy, Esq.
    Florida Bar No.: 0052700
    Lauren Hausman, Esq.
    Florida Bar No.: 1035947

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza
Daniel DeSouza, Esq.

---

[16] To the extent the Court is inclined to grant the Motion, Plaintiff notes that Elliman requested dismissal "with prejudice" yet has not pointed to any incurable pleading deficiency in the Complaint. Plaintiff thus requests that any dismissal be granted with leave to amend.